

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
12/07/2010

| | | |
|---|---|---|
| IN RE: | § § | |
| MARVKY CORPORATION, | § § § § | CASE NO. 10-37786-H1-11 (CHAPTER 11) |
| DEBTOR. | § | |

**THIRD AGREED INTERIM ORDER GRANTING AND CONDITIONING DEBTOR'S
USE OF CASH COLLATERAL THROUGH JANUARY 6, 2011**
[This instrument relates to Docket No. 13]

This matter came on to be heard upon the Emergency Motion for Interim and Final Use of Cash Collateral (the "Motion") (Docket No. 13) filed by Marvky Corporation (the "Debtor"). The Debtor and Fannie Mae, having appeared by counsel and due notice having been given, the Court, having considered the Motion, the evidence, and the arguments of counsel, finds and concludes that it is in the best interest of the Debtor and its estate to allow the Debtor to use Fannie Mae's Cash Collateral (defined hereafter) on an interim basis as set forth in this Third Agreed Interim Order Granting and Conditioning Debtor's Use of Cash Collateral Through January 6, 2011 (the "Order"), and further finds and concludes the following:

A.   The Debtor commenced this case by the filing of a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on September 6, 2010 (the "Petition Date").

B.   The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2).

C.   The Debtor is operating and managing its business as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. To date, no trustee or creditors committee has been appointed in this case.

D.   Sufficient and adequate notice of the Motion and the hearing with respect thereto has been given to prevent immediate and irreparable harm pursuant to Bankruptcy Rules 2002, 4001(b), and 9006, and as required by Sections 102, 361, 362, and 363 of the Bankruptcy Code.

E.   Good and sufficient cause has been shown for the entry of this Order.

F.   Fannie Mae asserts that it has a valid, perfected, first-priority secured claims against the Debtor in the aggregate amount of at least $7,988,665.01, consisting of at least $3,222,318.92 in unpaid principal, plus unpaid accrued interest, fees, expenses, and costs related to the Texas Note (hereafter defined), and at least $4,766,346.09 in unpaid principal, plus unpaid accrued interest, fees, expenses, and costs related to the Arizona Note (hereafter defined), in addition to other amounts due under the Loan Documents (hereafter defined), plus additional amounts as permitted by applicable law and the Bankruptcy Code (collectively, the "Fannie Mae Claim"). The Fannie Mae Claim is secured by, among other things, the Debtor's real and personal property located at 8787 Hammerly Blvd., Houston, TX 77080, commonly known as the Hammerly Walk Apartments (the "Texas Property"), the Debtor's real and personal property located at 4748 West Sierra Vista Dr., Glendale, AZ 85301, commonly known as the Maryland Lakes Apartments (the "Arizona Property," and together with the Texas Property, the "Properties"), and such other of the Debtor's real and personal property, including, but not limited to cash and cash collateral, all as more specifically described in the Loan Documents (collectively, the "Collateral").

G.   The Fannie Mae Claim is evidenced by certain loan documents (collectively, the "Loan Documents"), including without limitation, the following:

> (i)   Multifamily Note, dated January 7, 1999, executed by the Debtor and payable to Collateral Mortgage in the principal amount of $3,840,000.00 as security for certain financial accommodations extended to the Debtor by Collateral Mortgage (the "Texas Note").

2

(ii) Multifamily Deed of Trust, Assignment of Rents Security Agreement and Fixture Filing dated January 7, 1999, executed by the Debtor and granting a security interest in the property therein described in favor of Collateral Mortgage (the "Texas Deed of Trust"). The Deed of Trust was recorded in the Official Public Records of Harris County, Texas on January 8, 1999 under Clerk's File Number T483501.

(iii) Assignment of Deed of Trust from Collateral Mortgage to Fannie Mae dated January 7, 1999 (the "Texas Deed of Trust Assignment"). The Deed of Trust Assignment was recorded in the Official Public Records of Harris County, Texas on January 8, 1999 under Clerk's File Number T483503.

(iv) Assignment of Collateral Agreements and Other Loan Documents from Collateral Mortgage to Fannie Mae dated January 7, 1999 (the "Texas Collateral Agreements Assignment").

(v) Extension Agreement, executed by Fannie Mae and the Debtor on January 30, 2009, reinstating the Texas Note and extending its maturity date to February 1, 2010 (the "Extension Agreement"). The Extension Agreement was recorded in the Official Public Records of Harris County, Texas on August 14, 2009 under Clerk's File Number 20090369701.

(vi) Multifamily Note, dated January 7, 1999, executed by the Debtor and payable to Collateral Mortgage in the principal amount of $5,680,000.00 as security for certain financial accommodations extended to the Debtor by Collateral Mortgage (the "Arizona Note")

(vii) Multifamily Deed of Trust, Assignment of Rents and Security Agreement dated January 7, 1999, executed by the Debtor and granting a security interest in the property therein described in favor of Collateral Mortgage (the "Arizona Deed of Trust"). The Deed of Trust was recorded in the Official Public Records of Maricopa County, Arizona on January 7, 1999 under Clerk's File Number 99-0015484.

(viii) Assignment of Deed of Trust from Collateral Mortgage to Fannie Mae dated January 7, 1999 (the "Arizona Deed of Trust Assignment"). The Deed of Trust Assignment was recorded in the Official Public Records of Maricopa County, Arizona on January 7, 1999 under Clerk's File Number 99-0015486.

(ix) Assignment of Collateral Agreements and Other Loan Documents from Collateral Mortgage to Fannie Mae dated January 7, 1999

(the "Arizona Collateral Agreements Assignment").

(x) Forbearance Agreement (the "Forbearance Agreement"), executed by Fannie Mae and the Debtor on January 29, 2010, whereby Fannie Mae agreed to forbear exercising its rights and remedies under the Arizona Note until April 1, 2010 (the "Forbearance Period").

H. The Texas Note and Arizona Note evidence mortgage loans to the Debtor in the original principal amounts of $3,840,000.00 and $5,680,000.00, respectively (the "Loans"), the proceeds of which were used to finance the Properties. The Loan Documents were assigned to Fannie Mae pursuant to the Texas Deed of Trust Assignment, Texas Collateral Agreements Assignment, Arizona Deed of Trust Assignment, and the Arizona Collateral Agreements Assignment (collectively, the "Assignments").

I. To the extent permitted by the Bankruptcy Code and applicable law, all post-petition cash of the Debtor's bankruptcy estate and cash equivalents related to or generated by the Debtor, whether in the form of cash, negotiable instruments, documents of title, securities, deposit accounts, or in any other form that represents income, proceeds, products, or profits of Fannie Mae's Collateral that is now in the Debtor's (or persons in privity with the Debtor) possession, custody, or control, or in which the Debtor will obtain an interest during the pendency of the case, and all other "cash collateral" within the meaning of 11 U.S.C. § 363(a) (collectively, "Cash Collateral"), are the cash collateral of Fannie Mae.

J. The Debtor asserts that it has projected cash needs from the Petition Date through and including January 6, 2011, as set forth in the column marked "December" in the budget attached to this Order as **Exhibit A** (collectively, the "Budget"). This Order shall only permit the use of cash collateral during the Interim Period (defined herein), and Fannie Mae authorizes the Debtor to use Cash Collateral strictly in accordance with the terms of this Order and the Budget.

K.     The Debtor shall maintain account No. 0030097802 at Amegy Bank (the "Amegy DIP Account") and account No. 928945104 at J.P. Morgan Chase Bank (the "Chase DIP Account" and, collectively with the Amegy DIP Account, the "DIP Accounts"). The Debtor shall deposit into (i) the Amegy DIP Account all proceeds and collections from the Arizona Property, including all Cash Collateral, and all cash and revenue generated by the Debtor's business operations or otherwise received in connection with the Arizona Property, and (ii) the Chase DIP Account all proceeds and collections from the Texas Property, including all Cash Collateral, and all cash and revenue generated by the Debtor's business operations or otherwise received in connection with the Texas Property. The Debtor may use funds from the DIP Accounts only in accordance with the terms of this Order and the Budget.

It is therefore **ORDERED** that:

1.     The Motion is **GRANTED** on an interim basis as set forth in this Order.

### Restricted Use of Cash Collateral

2.     The Debtor is authorized to use Cash Collateral solely to pay the expenses described in the Budget for the period (the "Interim Period") from the entry of this Order through and including January 6, 2011 (the "Termination Date"), strictly in accordance with the Budget and subject to the terms and conditions provided in this Order. The Debtor shall make expenditures only for the purposes and up to the amounts set forth in the Budget, unless Fannie Mae consents in writing within the Interim Period, or the Court approves such additional expense(s) after notice and a hearing. The Debtor shall not incur expenses for any line item for an amount that exceeds the lesser of: (*i*) the amount for such line item in the applicable budget; and, (*ii*) the actual expenditure for such line item.

3. Except upon the occurrence of a Termination Event (defined hereafter), the Debtor's authority to use Cash Collateral under the terms of this Order shall continue until the Termination Date, at which time the Debtor's authority to use Cash Collateral will expire, unless the authority is extended by agreement in writing with Fannie Mae or by further order of the Court. Fannie Mae and the Debtor may agree to other terms of use of Cash Collateral in a writing filed with the Court.

4. The Debtor shall segregate and account to Fannie Mae for all Cash Collateral that the Debtor possesses, that it has permitted to be transferred, if any, into the possession of others, that is being held by those in privity with the Debtor, or which the Debtor might hereafter obtain.

### Reporting Requirements

5. The Debtor shall deliver to Fannie Mae and its counsel copies of the monthly operating reports that the Debtor is required to file with the Court for the preceding month, as well as a cash budget report for the prior month that reconciles the projected cash income and expenses against the actual cash income and expenses for the applicable month, via filing with this Court's ECF system and by e-mail to counsel for Fannie Mae by **6:00 p.m. Central Time on the 20th of each month**, beginning on December 20, 2010.

6. The Debtor shall also deliver the following reports to Fannie Mae and its counsel, via email by **6:00 p.m. Central Time on the 6th and 21st of each month**, beginning on December 21, 2010:

    (i) Complete copies of all bank statements from the DIP Accounts to the extent such bank statements have been received since the prior reporting period;

    (ii) Copies of current online bank statements or other statements evidencing current activity related to the DIP Accounts;

    (iii) A cash budget report, updated as of the 1st or 15th of the applicable cash budget period, indicating the cash balance of the

> DIP Accounts, and information regarding receipts and disbursements with sufficient information to identify the payee of each disbursement made by the Debtor.

7. Upon 48 hours notice to Debtor's counsel via email, the Debtor shall, during regular business hours, provide Fannie Mae and its counsel with a current online statement or other current bank statement evidencing current activity related to the DIP Accounts.

8. Upon 48 hours notice to Debtor's counsel by email, the Debtor shall, during regular business hours, allow Fannie Mae to review and copy: (*i*) all invoices, contracts, leases, and other documents and writings relating to any and all disbursements made or obligations incurred by the Debtor with respect to the operation of its business; and, (*ii*) any and all other books and records of the Debtor pertaining to its use of Cash Collateral. Fannie Mae will provide Debtor's counsel copies of any documents copied pursuant to this provision.

9. Upon 48 hours notice to Debtor's counsel by email, the Debtor shall, during regular business hours, permit representatives, agents, and/or employees of Fannie Mae to visit, inspect, have reasonable access to and consult with, as the case may be: (*a*) the Debtor's books and records; (*b*) the personnel and/or agents of the Debtor who are familiar with the Debtor's books and records or the information set forth therein; (*c*) the Debtor's business; and, (*d*) such other information as Fannie Mae may reasonably request. The Debtor and its representatives, agents, and/or employees shall cooperate and consult with, and provide to such representatives, agents, and/or employees of Fannie Mae all such information as they may reasonably request during regular business hours.

10. Delivery of e-mail notification to Fannie Mae's counsel shall be made to Matthew T. Ferris at mferris@winstead.com and Sean B. Davis at sbdavis@winstead.com. Delivery of e-mail notice to the Debtor and its counsel shall be made to John Akard, Jr. at johnakard@attorney-cpa.com.

### Adequate Protection

11. To the extent Cash Collateral is used during the Interim Period, as partial adequate protection of Fannie Mae's interest in its Collateral and Cash Collateral, the Debtor hereby grants Fannie Mae, to the extent of any diminution or usage of Fannie Mae's Collateral on a dollar for dollar basis, valid, binding, enforceable, and automatically perfected first priority replacement liens and security interests in, to, and against the Properties and any and all of the Debtor's other assets, real or personal, on which Fannie Mae holds a valid security interest as of the Petition Date, whether such assets are acquired or generated before or after the Petition Date, whether now owned and existing or hereafter acquired, created, or arising, and all products and proceeds thereof, and all accessions thereto, substitutions and replacements therefore; excluding, however, any and all causes of action held by the Debtor or its estate pursuant to Chapter 5 of the Bankruptcy Code.

12. As partial adequate protection of Fannie Mae's interest in its Collateral and Cash Collateral, Fannie Mae is hereby granted an allowed administrative expense claim under Section 364(c)(1) of the Bankruptcy Code, with priority in payment over any and all administrative expenses arising under Bankruptcy Code Sections 507(b) and 503(b), to the extent of any diminution in the value of Fannie Mae's interest in the Collateral and Cash Collateral.

13. As further partial adequate protection, the Debtor shall provide to Fannie Mae, on a monthly basis, payments for tax and insurance escrows in the amount of $22,496.00 related to the Texas Property and $11,828.00 related to the Arizona Property, no later than **6:00 p.m. Central Time** on the **10th** day of each month, with such payments beginning December 10, 2010.

14. As additional partial adequate protection, the Debtor shall make an adequate protection payment to Fannie Mae in the amount of $30,000.00, using funds from the DIP Accounts, not later than **6:00 p.m. Central Time** on **December 21, 2010**.

15. As further partial adequate protection, the Debtor: (*i*) acknowledges that in any sale of or which includes Fannie Mae's Collateral under 11 U.S.C. § 363 (whether pursuant to a plan of reorganization or otherwise) in this case, Fannie Mae shall have the right to credit bid pursuant to 11 U.S.C. § 363(k) with respect to Fannie Mae's Collateral; (*ii*) acknowledges that in any sale of or which includes Fannie Mae's Collateral under any circumstances, Fannie Mae shall have the right to credit bid pursuant to 11 U.S.C. § 1123(b)(4); and, (*iii*) agrees not to seek an order to the contrary. Nothing in this paragraph will limit any of the Debtor's rights to challenge the validity, perfection, or priority of the security interests and liens of Fannie Mae as described below on or before the Challenge Deadline.

16. To the extent that 11 U.S.C. § 362, or any applicable non bankruptcy law otherwise would restrict the granting, scope, enforceability, attachment, or perfection of the liens and security interests authorized or created in this Order, or otherwise would impose filing or registration requirements with respect to such replacement liens, such law is hereby preempted to the maximum extent permitted by the Bankruptcy Code, other applicable federal law, and the judicial power of the United States Bankruptcy Court. The liens and interests granted to Fannie Mae by and through this Order do not require filing, recording, or perfecting, and shall be binding and fully enforceable by the entry of this Order; however, the Debtor shall execute any additional instruments required by Fannie Mae to evidence the post-petition liens and security interests granted herein.

17. The Debtor shall remain current in all post-petition tax payments and reporting obligations, including, but not limited to, all federal trust fund taxes. On reasonable request by Fannie Mae, the Debtor shall provide copies of all tax returns, instruments used to remit tax payments, and all supporting documentation to Fannie Mae. The Debtor verifies to the best of its knowledge and belief that all payments to all taxing authorities with respect to Fannie Mae's Collateral are current at the present time.

### Events of Default/Remedies

18. The occurrence of any of the following shall constitute an event of default under this Order: (*a*) any breach by the Debtor of its obligations under this Order; (*b*) conversion of the Debtor's case to a case under Chapter 7 of the Bankruptcy Code; (*c*) appointment of a trustee in the Debtor's Chapter 11 proceedings; (*d*) dismissal of the Debtor's case; (*e*) the entry of any order reversing, revoking, or rescinding this Order without the express prior written consent of Fannie Mae (any of the foregoing events of default being referred to in this Order individually as an "Event of Default" and collectively as "Events of Default").

19. Unless otherwise agreed to in writing by the Debtor and Fannie Mae, the Debtor's right to use Cash Collateral shall expire on the earlier of (each a "Termination Event"): (*a*) midnight on January 6, 2010, unless extended or modified by further order of the Court or the written agreement of the Debtor and Fannie Mae; (*b*) the appointment of a Chapter 11 trustee; (*c*) conversion of this case to a case under Chapter 7 of the Bankruptcy Code; (*d*) the lifting of the automatic stay to allow Fannie Mae to foreclose on any of Fannie Mae's Collateral after the running of any applicable cure periods; (*e*) such time as the Debtor fails to fully and completely cure an Event of Default within **three (3) business days** after receipt of written notice to

Debtor's counsel via email from Fannie Mae or its counsel of the Event of Default. Fannie Mae shall also file notice of an Event of Default with the Court.

20. Fannie Mae shall not be obligated to, but may, in its sole and absolute discretion, and only upon written consent of Fannie Mae, ~~advance~~ [authorize any] Cash Collateral to the Debtor after an uncured default, and all such ~~advances~~ [authorizations] of Cash Collateral: (*a*) shall not constitute a waiver, limitation, or modification of any of Fannie Mae's rights and remedies pursuant to the applicable Loan Documents, this Order, and applicable law; and, (*b*) shall be and hereby are granted all of the protections granted to the Loan Documents under this Order.

### **Further Relief**

21. The right of the Debtor to use Cash Collateral pursuant to this Order shall terminate on the Termination Date, unless the Termination Date is consensually extended by Fannie Mae in writing.

22. Nothing contained in this Order shall be deemed to be consent by Fannie Mae to any charge, lien, assessment, or claim against Fannie Mae's Collateral under 11 U.S.C. § 506(c) or otherwise, and shall be without prejudice to any and all of Fannie Mae's rights and obligations under the Loan Documents, the Bankruptcy Code, and other applicable law. Nothing in this Order shall be deemed to be consent by Fannie Mae of the Debtor's use of Collateral or Cash Collateral prior to the Interim Period. Nothing in this Order shall impair the rights of the taxing authorities with respect to tax liens on Fannie Mae's Collateral.

23. Except for the liens, mortgages, and security interests granted to Fannie Mae, and except as may be agreed to in writing by Fannie Mae, the Debtor shall not cause, permit or consent to any liens, mortgages, or security interests to encumber any or all of the Properties.

24. Notwithstanding any other provision of this Order, in the event that the Debtor possesses any cash collateral during the pendency of this case that is not subject to Fannie Mae's interest, such cash collateral shall be used (or deemed to have been used) by the Debtor prior to the use of any Cash Collateral. Additionally, to the extent that any collateral or cash collateral is determined to be free of Fannie Mae's interest, at any time during the pendency of this case, such cash collateral, collateral, or the proceeds thereof, shall be used (or deemed to have been used) by the Debtor prior to the use of any Cash Collateral.

25. The Debtor shall seek necessary authority to make any and all payments necessary to keep the Collateral, any collateral provided to Fannie Mae by this Order, and the Debtor's other property, in good repair and condition. The Debtor shall make all insurance premium payments required to keep the Collateral insured. The Debtor shall maintain all of the Collateral, any collateral provided to Fannie Mae by this Order, and the Debtor's other property, in good condition and repair, not commit any waste thereof and make all necessary replacements thereof, and operate the same properly and efficiently. The Debtor shall maintain insurance throughout the Debtor's bankruptcy case, unless otherwise ordered by the Court. Failure to maintain insurance on any of the Collateral may result in the lack of adequate protection to Fannie Mae for such property and may give rise to cause for Fannie Mae to seek to lift the automatic stay pursuant to section 362(d) of the Bankruptcy Code.

26. Fannie Mae consents to the Debtor's use of Cash Collateral to pay the U.S. Trustee's quarterly fees as they become due.

~~27. Any challenge by the Debtor to the validity, perfection, or priority of the security interest and liens of Fannie Mae in this case must be commenced by way of adversary proceeding on or before December 6, 2010 (the "Challenge Deadline"). If the Debtor does not~~

commence an adversary proceeding on or before the Challenge Deadline, then: (*a*) the Debtor shall be deemed to have agreed and acknowledged that Fannie Mae's liens against and security interests in the Collateral are legal, valid, binding, perfected, and otherwise unavoidable in an amount no less than $7,988,665.01; and, (*b*) Fannie Mae's liens shall not be subject to any other or further challenge by the Debtor. No Collateral or Cash Collateral, or the proceeds thereof, shall be used for the purpose of: (*i*) objecting to or contesting in any manner, or in raising any defenses to, the validity, extent, perfection, priority, or enforceability of the Fannie Mae Claim or any liens or security interests with respect thereto; (*ii*) preventing, hindering, or delaying Fannie Mae's enforcement of remedies and collection rights against and upon any of Fannie Mae's Collateral, except for motions to lift the stay; or, (*iii*) modifying Fannie Mae's rights under the applicable Loan Documents with the Debtor.

28. This Order shall be effective upon signature by the Court, and may be relied upon by Fannie Mae and the Debtor without the necessity of entry into the docket sheet of this case. To the extent any findings of fact may constitute conclusions of law, and *vice versa*, they are hereby deemed as such.

29. The terms, stipulations, and provisions of this Order shall be binding upon, and shall inure to the benefit of, the respective parties' successor and assigns, including without limitation, any trustee appointed in this case, or in any Chapter 7 case to which this Chapter 11 case may be converted, and all creditors and parties-in-interest.

30. This order is without prejudice to the parties' rights to request a hearing regarding the Debtor's future use of Cash Collateral. The relief granted in this Order is expressly without prejudice to the rights of either Fannie Mae or the Debtor to seek any other relief at any time including, without limitation, the right of Fannie Mae to seek additional adequate protection.

31. Pursuant to Bankruptcy Rule 4001(b)(2), the Final Hearing on the Motion is set for January 6, 2011 at 10:00 a.m. in Courtroom 404, on the 4th Floor of the United States Courthouse, located at 515 Rusk St., Houston, Texas 77002. The Debtor shall promptly mail copies of this Cash Collateral Order to all creditors and parties-in-interest. Any party-in-interest objecting to the relief sought at the Final Hearing shall serve and file written objections, which objections shall be served upon: (*a*) counsel for the Debtor; (*b*) counsel for Fannie Mae; and (*c*) the Office of the U.S. Trustee for the Southern District of Texas, and shall be filed with the Clerk of the United States Bankruptcy Court for the Southern District of Texas no later than **2 business days** before the Final Hearing.

### Reservation of Rights

32. This Order and the Debtor's use of Cash Collateral pursuant to this Order shall not be deemed an admission or a determination of the value of the property upon which Fannie Mae asserts liens or security interests, or as to the amount or allowance of Fannie Mae's status as a secured, unsecured, or under-secured creditor, all such issues being reserved pending further orders of this court. Further, the consent of Fannie Mae to this Order does not constitute a waiver of any pre-petition default under the Loan Documents.

**SIGNED this** 7 **day of** December, 2010

THE HONORABLE MARVIN ISGUR
UNITED STATES BANKRUPTCY JUDGE

14

**APPROVED AS TO FORM:**
John Akard, Jr.
JOHN AKARD, JR. P.C.
7500 San Felipe, Suite 700
Houston, TX 77063
Telephone: (713) 785-5595
Facsimile: (713) 785-8651

By: __/s/ John Akard, Jr.*__
    John Akard, Jr.
    State Bar No. 00790212

**PROPOSED ATTORNEY FOR THE DEBTOR**

**AND**

**WINSTEAD PC**
1100 JPMorgan Chase Tower
600 Travis Street
Houston, Texas 77002
(713) 650-8400 (Telephone)
(713) 650-2400 (Facsimile)

By: __/s/ Sean B. Davis__
    Matthew T. Ferris[1]
    State Bar No. 24045870
    Sean B. Davis
    State Bar No. 24069583
    S.D. Tex. No. 1048341

**ATTORNEYS FOR FANNIE MAE**

\* Signed by Permission, Sean B. Davis

---

[1] Resident at Winstead's Dallas office.

# Exhibit A

## Marvky Corporation December Cash Budget

# of Units  432

|  | December |
|---|---|
| **Beginning Cash Balance** | 156,128.61 |
| **Sources** | |
| Net Rental Income | 157,776.00 |
| Total Other Income | 14,728.00 |
| **GROSS OPERATING INCOME** | **172,504.00** |
| | |
| **Uses** | |
| Total Utility Expenses | 32,903.00 |
| Utility Deposits | 0.00 |
| Total Payroll | 42,715.00 |
| Total Administrative Expenses | 9,155.00 |
| Total Maintenance | 10,704.00 |
| Taxes & Insurance | 34,323.20 |
| Management Fees | 10,142.78 |
| Miscellaneous/Franchise&Sale Tax | 2,519.85 |
| **GROSS OPERATING EXPENSE** | **142,462.83** |
| | |
| **NET OPERATING INCOME** | **30,041.17** |
| | |
| Adequate Protection Payment | 30,000.00 |
| | |
| **NET CASH FLOW** | **41.17** |
| | |
| **Ending Cash Balance** | **156,169.78** |

Notes
1. December forecast for other income includes the monthly cable payment.
2. December forecast for payroll includes is a 3 payroll period.

## Hammerly Walk December Cash Budget

# of Units: 236

|  | December |
|---|---|
| **Beginning Cash Balance** | 114,137.01 |
| **Sources** | |
| Net Rental Income | 102,492.00 |
| Total Other Income | 11,063.00 |
| **GROSS OPERATING INCOME** | **113,555.00** |
| | |
| **Uses** | |
| Total Utility Expenses | 23,126.00 |
| Utility Deposits | 0.00 |
| Total Payroll | 19,954.00 |
| Total Administrative Expenses | 3,545.00 |
| Total Maintenance | 5,574.00 |
| Taxes & Insurance | 22,495.20 |
| Management Fees | 3,406.65 |
| Miscellaneous/Franchise Tax | 838.75 |
| **GROSS OPERATING EXPENSE** | **78,939.60** |
| | |
| **NET OPERATING INCOME** | **34,615.40** |
| | |
| Adequate Protection Payment | 12,000.00 |
| | |
| **NET CASH FLOW** | **22,615.40** |
| | |
| **Ending Cash Balance** | 136,752.41 |

**Maryland Lakes December Cash Budget**

# of Units: 196

|  | December |
|---|---|
| **Beginning Cash Balance** | 41,991.60 |
| **Sources** | |
| Net Rental Income | 55,284.00 |
| Total Other Income | 3,665.00 |
| **GROSS OPERATING INCOME** | **58,949.00** |
| | |
| **Uses** | |
| Total Utility Expenses | 9,777.00 |
| Utility Deposits | 0.00 |
| Total Payroll | 22,761.00 |
| Total Administrative Expenses | 5,610.00 |
| Total Maintenance | 5,130.00 |
| Taxes & Insurance | 11,828.00 |
| Management Fees | 6,736.13 |
| Miscellaneous/Sales Tax | 1,681.10 |
| **GROSS OPERATING EXPENSE** | **63,523.23** |
| | |
| **NET OPERATING INCOME** | (4,574.23) |
| | |
| Adequate Protection Payment | 18,000.00 |
| | |
| **NET CASH FLOW** | (22,574.23) |
| | |
| **Ending Cash Balance** | 19,417.37 |